NATHAN SMITH & another, executors, *vs.* JAMES J. SMITH.

Middlesex.   Jan. 12. — 13, 1875.   AMES & ENDICOTT, JJ., absent.

A mortgagee of land assigned the mortgage to a corporation as collateral security for the payment of a note which was also secured by a mortgage of other land owned by him. The corporation by vote afterwards authorized its president and secretary to cancel the principal mortgage, but by mistake the president discharged both mortgages upon the record. The charter of the corporation provided that the president should keep the corporate seal, and the only provision in its charter or by-laws relating to the execution of instruments in its behalf was that the corporation should be bound by all instruments which it should lawfully make, when executed in its name and pursuant to its rules, being signed and delivered by the president, secretary, treasurer or other officers or persons as it should appoint, and sealed by its common seal. *Held*, that the discharge of the collateral mortgage was without authority from the corporation and was void.

WRIT OF ENTRY to recover a parcel of land in Newtonville, of which the plaintiffs alleged seisin in mortgage. Plea, *nul disseisin*, with a specification of a discharge of the mortgage. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions in substance as follows :

Edward Page, who died in 1872, conveyed the demanded premises to Asa T. Ring, September 1, 1857 ; and on the same day Ring conveyed the same premises to Page in mortgage to secure the payment of a note for $2100, on three years, with interest payable semi-annually. On September 19, 1857, Page assigned the mortgage and note to the Massachusetts Charitable Society ; and, in the habendum clause of the assignment, appeared the following : " As collateral security for the payment of a note made by me, the said Page, to the said Massachusetts Charitable Society, on August 13, 1852, for the sum of six thousand dollars, subject, nevertheless, to the right and equity of redemption of the

within named Ring, his heirs and assigns in the same." The mortgage and assignment were recorded September 22, 1857. Under date of November 26, 1859, the following entry was written upon the margin of the record of the mortgage : "Cambridge, Nov. 26, 1859. The Massachusetts Charitable Society, the assignees of this mortgage deed, acknowledge to have received full payment and satisfaction of this mortgage, and do, therefore, hereby cancel and discharge the same. Samuel H. Hunneman. Witness, Charles B. Stevens." The following memorandum appears on the margin, but when and by whom made does not appear : "See an assignment to N. Smith, January 14, 1860, Book 832, Page 415."

On or before November 26, 1859, Edward Page paid his note for $6000 to the society; and, by vote of the corporation, the president and secretary were authorized to discharge the mortgage on other land by which it was secured. "Boston, November 25, 1859. The Society voted that the President and Secretary are hereby authorized to cancel the mortgage of Edward Page, upon receipt of the principal and interest." No mention of the collateral mortgage was made in the vote of the corporation; but, by mistake, the president discharged both the principal and collateral mortgage. The $2100 mortgage was not paid to the society, and it should have been reassigned to Page. Page held the original Ring mortgage and note; and, not knowing of the discharge, sold and assigned it to Nathan Smith, the plaintiffs' testate, January 14, 1860; and that assignment was recorded January 17, 1860.

On November 25, 1857, Ring conveyed the equity to Charles P. Shattuck, "subject to two mortgages ; one originally given to said Page for twenty-one hundred dollars, and one to the Newton Mutual Loan and Fund Association for twelve hundred and seventy-two dollars."

The mortgage of $1272 was discharged November 25, 1857, on the margin of the record. On January 6, 1863, W. F. Davis, Shattuck's assignee in insolvency, conveyed to Francis A. Shattuck "subject to a mortgage for twenty-one hundred dollars with interest thereon." On July 20, 1866, Shattuck conveyed to Henry J. Darling "subject to a mortgage of twenty-one hundred dollars to said Page, which the grantee assumes and agrees to

pay." On August 27, 1867, Darling mortgaged to Julia C. Bar-
nard for $2900, free from incumbrances, "except a mortgage
for $2100." On September 18, 1872, Darling conveyed to the
defendant " subject to two mortgages amounting to five thousand
dollars."

On February 20, 1873, the Massachusetts Charitable Society
executed and delivered a paper to the plaintiffs, as executors,
reciting the $6000 mortgage from Page ; the assignment of the
Ring mortgage to it, as collateral ; the payment of Page's indebt-
edness to it, and the discharge of the collateral mortgage of $2100,
by the president of the society, at the same time he discharged
the principal mortgage ; acknowledging that the discharge of the
collateral mortgage was a mistake, and without right or authority
from the society ; disclaiming and denying the authority of its
president to discharge the mortgage assigned to it as collateral,
and in consideration of the payment of the said $6000 mortgage,
assigned the Ring mortgage to the plaintiffs. The interest on
the Ring mortgage note was paid regularly by the owner of the
equity until the defendant purchased.

It is provided by the charter of the society that the officers
shall be a president, secretary and treasurer ; that the president
should keep the seal of the society ; and the following is the only
provision in the charter, or by-laws, relating to the execution of
instruments in behalf of the society : " All instruments which said
society shall lawfully make shall, when in the name of said soci-
ety, and pursuant to the rules thereof, being signed and delivered
by the president, secretary, treasurer or other officers or person
as the said society shall appoint, and sealed with their common
seal, bind said society and be valid in law." By the by-laws the
treasurer was made custodian of the funds of the society.

It appeared that Samuel H. Hunneman was president of the
society ; that the discharge of the principal mortgage, and the
paper of February 20, 1873, were authorized by vote of the soci-
ety ; that there was no mortgage outstanding September 18,
1872, except the Barnard mortgage and the one in suit, if not
discharged.

All these records and facts were admitted in evidence, and upon
them the judge ruled that the president of the society had no
authority to discharge the collateral mortgage, and found for the
plaintiffs. The defendant alleged exceptions.

*D. C. Linscott*, for the defendant. The plaintiffs' suit is based upon the mortgage given by Ring to Page, dated September 1, 1857, for $2100. This mortgage and the note secured by it were assigned to the Massachusetts Charitable Society. Although it held the mortgage and note as collateral security, it could, nevertheless, receive payment of the note and discharge the mortgage. A mortgagee or his assignee can discharge the mortgage before it is due, and without receiving the debt secured by it. He cannot be compelled to discharge it without payment of the debt, but he may do so if he pleases.

The mortgagee having the power to discharge the Ring mortgage, has exercised this power, and discharged the mortgage; and the discharge cannot be impeached in this suit. The plaintiffs' remedy, if the discharge was by mistake, is by bill in equity to reform the record. *Bruce* v. *Bonney*, 12 Gray, 107. *Chamberlain* v. *Bradley*, 101 Mass. 188. The records show that the Ring mortgage has been discharged by the society, acting through its president, in due form on the margin.

2. A corporation must act through its officers or authorized agents, and unless there is some provision in the charter or by-laws to the contrary, the president, by virtue of his office, is held out as the accredited agent of the corporation. He may act in behalf of the corporation without special authority, and the corporation is bound by his act. The provision in the charter confers ample authority upon the president to execute for the corporation any instrument under seal. A marginal discharge of a mortgage under the statute is equivalent to a release under seal, and if the president may sign and seal an instrument for the corporation, he may sign without the seal when that would give no greater effect to the instrument. If the president could have executed a discharge of the mortgage in question, by a separate instrument under seal, he could accomplish the same thing by a discharge on the margin.

3. The president was authorized by vote of the society to discharge this mortgage. The mortgage of Edward Page, or Edward Page's mortgage, was this mortgage of $2100. This is the only mortgage of Page's mentioned in the bill of exceptions. The president and secretary are both authorized to discharge the mortgage, but this does not make it necessary that both should

sign the discharge.   It is like the case of two executors, two trus-
tees or two mortgagees; either is authorized to receive payment
and discharge the mortgage.   So far as the payment of the prin-
cipal and interest is concerned, it appears that Page owed the
society $6000, and this he paid.   Besides, the society having
authorized its president in a certain event to discharge the mort-
gage, and the president having discharged it in due form on the
record, a purchaser would not be required to inquire into all the
details and circumstances connected with the discharge.   The so-
ciety, having intrusted its president with the performance of cer-
tain duties, is bound by his acts, even if he should exceed his
authority in some respects.

4. The ruling that the president did not have authority to dis-
charge this mortgage was clearly erroneous, for whether he had
this authority or not was wholly a question of fact, and not of
law.   The defendant had the legal right to have the question of
the president's authority determined upon the evidence and not
as a question of law.

*C. R. Train*, for the plaintiffs.

BY THE COURT.   Hunneman is not shown to have had any
authority from the corporation to discharge the Ring mortgage.

*Exceptions overruled.*